UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| WILLIAM M. NASH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-132 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits (DIB). Plaintiff filed his application on March 5, 2004 (A.R. 56-58), claiming a November 20, 2002 onset of disability. Plaintiff's claim was denied on initial review. (A.R. 39-44).

      On June 5, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 690-726). The ALJ received testimony during the hearing from plaintiff and a vocational expert. Plaintiff testified that in 2002 he had surgery on his right shoulder, and in 2004 he had right carpal tunnel surgery. (A.R. 696, 698). Plaintiff reported that he was not receiving any ongoing treatment for this shoulder problem other than his "own therapy," which consisted of performing "home exercises." (A.R. 697). Plaintiff testified that he experienced headaches "every day" that he treated with "Excedrin, extra strength." (A.R. 698). Further, he testified that on his "good days" he required, at minimum, a three-hour nap for headache

and pain relief. (A.R. 705, 713). He stated that he experienced panic attacks "every week" and crying spells "[a]bout once a week." (A.R. 700). Plaintiff testified that he prepared his own meals or went out to eat. (A.R. 706). He drove a car on a daily basis and shopped for groceries. (A.R. 706). Plaintiff had no difficulty with taking care of his laundry and he performed household tasks such as vacuuming and dusting. (A.R. 707). Plaintiff reported that he attended "concerts a couple of times a year" (A.R. 708) and that he used his computer "[o]nce a day." (A.R. 709). On June 25, 2007, the ALJ issued her decision denying plaintiff's application for DIB benefits. (A.R. 16-26). On January 12, 2008, the Appeals Council denied review (A.R. 6-8), and the ALJ decision became the Commissioner's final decision.

On February 7, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision. Plaintiff's brief contains the following statement of errors:

> I. THE ALJ VIOLATED THE REGULATION THAT REQUIRES DEFERENCE TO TREATOR OPINIONS.
>
> II. THE ALJ VIOLATED THE REGULATION THAT REQUIRES GOOD REASONS FOR REJECTING A TREATOR'S OPINIONS.
>
> III. THE ALJ LACKED VALID REASONS TO REJECT PLAINTIFF'S TESTIMONY REGARDING THE EXTENT AND EFFECT OF HIS SYMPTOMS.
>
> IV. THE EFFECT OF THE FOREGOING ERRORS WAS AN INACCURATE HYPOTHETICAL WHICH FAILED TO CARRY THE SSA'S BURDEN OF PROOF AT THE FIFTH STEP.
>
> V. THE APPEALS COUNCIL ERRED IN NOT REMANDING BASED ON NEWLY DISCOVERED EVIDENCE.

(Plf. Brief at 2, docket # 6). Upon review, I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Jordan v. Commissioner*, 548 F.3d 417, 422 (6th Cir. 2008); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the

conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on November 20, 2002, his asserted onset of disability, and continued to meet them through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. The ALJ found that plaintiff's right shoulder impingement syndrome, right carpal tunnel syndrome, cervical spondylosis, and mood disorder were severe impairments. The ALJ found that headaches, which plaintiff treated with over-the-counter medication, were not a severe impairment: "The claimant's assertions of severity and need for emergency room treatment [for headaches were] not supported by the medical record" and there was "no objective evidence to show that the headaches impos[ed] more than a minimal limitation on his ability to do work-related activities." (A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ found that plaintiff's subjective complaints were not fully credible:

> The claimant and his attorney are not persuasive. The claimant's alleged limitations outweigh the objective medical record. At the hearing, they focused on headaches supposedly keeping the claimant in bed two times a week, but there is no objective medical evidence to support this assertion. As noted above, the claimant has not visited the emergency room, been hospitalized, or sought and receiv[ed] ongoing treatment for the alleged headaches. Furthermore, the claimant stated he drives daily, reads, does exercises, gets on the computer once a day to check up on e-mail, goes to the store a couple of times a week, does [his] own laundry and keeps his area clean. The claimant testified that he lives with his mother. The headaches do not interfere with the claimant's attending concerts a couple of times a year and [he] testified that he stands and leans a lot for comfort. He goes to church occasionally and reads religious materials. Further, the claimant watches news on television and does home exercises.

> During the hearing, the claimant described panic attacks occurring weekly and lasting briefly but coming back at times. In addition, he claimed some paranoia. The claimant stated that he has seen Dr. Wilmarth (Exhibit 28F) for psychiatric treatment for the past 2 1/2 to 3 years but it is noted that there was more than [a] one year absence from seeking treatment in 2006 (Exhibit 21F). Although the record suggests that the claimant was upset how things were handled by his former employer, neither he nor his attorney mentioned this at the hearing.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's testimony concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(A.R. 24). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a limited range of unskilled, light work. Plaintiff needed to avoid concentrated exposure to vibrations and he could use his right upper extremity frequently, but not constantly. (A.R. 19-25). Plaintiff was unable to perform his past relevant work as a brake operator which had been heavy to very heavy in its exertional demands. (A.R. 25). Plaintiff was forty years old as of the date of his alleged onset of disability and forty-five years old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for DIB benefits plaintiff was classified as a younger individual. Plaintiff has at least a high school education and is able to communicate in English. (A.R. 25). The ALJ found that the transferability of job skills was not material because plaintiff's past relevant work was unskilled. (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 60,600 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 721-24). The ALJ held that this constituted a significant number of jobs. Using Rule 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 25-26).

**1.**

Plaintiff argues that the Appeals Council "erred in not remanding [this case to the Social Security Administration] based on newly discovered evidence[.]" (Plf. Brief at 2, Statement of Errors ¶ V). Plaintiff's brief contains no developed argument corresponding to this purported error. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming *arguendo* that the issue has not been waived, it is patently meritless. The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."). Further assuming that this court possessed jurisdiction to review the Appeals Council's denial of a request for remand, it is clear that the Appeals Council did not err when it declined to remand this case to the Social Security Administration on the basis of newly discovered evidence. Plaintiff filed two documents in support of his request for review by the Appeals Council: (1) a July 10, 2007 letter from his attorney (AC-1, A.R. 685-87) raising various arguments in support of requests that the Appeals Council "reverse [the ALJ's] decision and award benefits" (A.R. 687), but utterly lacking any request for remand on the basis of newly discovered evidence; and (2) a progress report dated October 23, 2007 from Michigan Pain Consultants, PC, electronically signed by Physician's Assistant Charles Bray and Daniel Mankoff, M.D. (AC-2, A.R. 688-89), unaccompanied by any argument. The Appeals Council cannot be faulted for its failure to address arguments that plaintiff's attorney never articulated. The Appeals

Council expressly considered Dr. Mankoff's progress notes and the arguments found in Attorney Frederick W. Bleakley's July 10, 2007 letter (*see* A.R. 6, 9), when the Appeals Council declined to grant discretionary review.

Plaintiff invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence. (Plf. Brief at 11). For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner:

> Failing that, the case should be remanded for reconsideration, considering newly discovered evidence and free of errrors [sic] pointed out herein.

(Plf. Brief at 19). Plaintiff's entire argument in support of his request for remand appears in a footnote:

> This report [Dr. Mankoff's October 23, 2007 progress note] was submitted to the Appeals Council. If this evidence could make a difference in the outcome, then Plaintiff is entitled to a rehearing to consider the new evidence. The finding of spasm is such evidence, since that is direct corroboration of plaintiff's reported symptoms which could have tripped the balance in favor of the ALJ finding Plaintiff credible.

(Plf. Brief at 11 n.2).

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) to demonstrate that the evidence plaintiff now presents is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

The October 23, 2007 progress notes are "new" because they are dated months after the ALJ's June 25, 2007 decision finding that plaintiff was not disabled. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007). Contrary to plaintiff's attorney's assumption, "good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003). Plaintiff has not addressed or carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Plaintiff was examined at the offices of Michigan Pain Consultants PC on October 23, 2007. The progress notes generated in connection with this examination were electronically signed by Physician's Assistant Charles Bray and Dr. Mankoff. (A.R. 689). The progress notes state that plaintiff had "no upper extremity muscle atrophy or edema." (A.R. 688). "His biceps, triceps, brachial radialis deep tendon reflexes were +1. His upper extremity strength [was] intact. Evaluation of the thoracic and lumbar spine was essentially unremarkable. There [was] no lower

extremity edema or muscle atrophy. His lower extremity strength [was] intact." (A.R. 688). There was "some evidence" of spasms in the upper trapezial region, but "no evidence of erythema or swelling." (A.R. 688). Plaintiff argues that the finding of "some evidence" of spasm in plaintiff's upper trapezial region" on October 23, 2007, "could have tipped the balance" in favor of a more favorable credibility determination by the ALJ. (Plf. Brief at 11 n.2). A fair reading of the entire report fails to support this conclusion. If anything, the objective evidence in the progress notes of plaintiff's normal muscle strength and the absence of edema or atrophy would only serve to reinforce the ALJ's credibility determination. The October 23, 2007 progress notes would not have reasonably persuaded the Commissioner to reach a different conclusion with regard to whether plaintiff was disabled during the period from November 20, 2002 through June 25, 2007.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Plaintiff's request for a sentence six remand should be denied. Plaintiff's arguments will be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ "violated the regulation that requires deference to treator opinions." (Plf. Brief at 2, Statement of Errors ¶ I). Specifically, plaintiff contends that the ALJ violated 20 C.F.R. § 404.1527(d)(2) when he failed to give adequate weight to the opinions that plaintiff's treating physician, Richard A. Bereza, M.D., expressed in a February 21, 2005 "Medical Assessment of Ability to Do Work-related Activities (Physical)." (Plf. Brief at 13-14). Further, plaintiff argues that the ALJ failed to comply with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Bereza's February 2005 assessment. (Plf. Brief, Statement

of Errors at ¶ II). I find that plaintiff's arguments do not provide grounds for disturbing the Commissioner's decision. The ALJ did not violate the treating physician rule, and the ALJ gave very good reasons in her opinion for giving little weight to Dr. Bereza's February 21, 2005 assessment.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008)("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008). The ALJ expressly evaluated the opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSR 96-2p. (A.R. 19-25).

Plaintiff claimed a November 20, 2002 onset of disability. On November 20, 2002, James R. Ringler, M.D., plaintiff's treating orthopedic surgeon, performed a subacromial decompression with right distal clavicle resection. (A.R. 276-96). On June 24, 2003, Dr. Ringler found that plaintiff's "strength [was] 5/5 with internal and external rotation as well as abduction." Plaintiff had a "full range of motion." Dr. Ringler offered a diagnosis of "impingement syndrome." (A.R. 108). Peter C. Theut, M.D., another treating physician, examined plaintiff on October 20, 2003. Plaintiff continued to display an "excellent" passive range of motion in his right shoulder and a slightly diminished range in active motion at the extremes. (A.R. 105). Dr. Theut observed that plaintiff had "some tenderness over the residual AC joint, but there [was] no real instability. Impingement signs [were] mildly positive." (A.R. 105). Plaintiff did not have any motor or sensory deficits. Dr. Theut reviewed plaintiff's MRI and found "no evidence of any significant residual bony compression and that plaintiff's "rotator cuff [was] entirely intact." (A.R. 105). Plaintiff returned to Dr. Ringler in January of 2004. Dr. Ringler found that plaintiff had a "mildly-positive overhead

and cross-arm impingement sign." (A.R. 102). Plaintiff had a full range of motion. His strength was intact to abduction and internal and external rotation. (A.R. 102).

Dr. Bereza started treating plaintiff's right shoulder in March of 2004 (A.R. 490-91), approximately sixteen months after plaintiff's alleged onset of disability. X-rays revealed complete relief of the acromial spur that had been present before plaintiff's 2002 surgery. Examination revealed a "good strong rotator cuff." (A.R. 490). Plaintiff had a good range of motion. Plaintiff's strength was "good with grip, intrinsics, biceps, triceps and deltoid." (A.R. 490). Dr. Bereza recommended an injection with a long-lasting corticosteriod and indicated that he would have a nerve conduction test performed to check for cervical radiculopathy. (A.R. 491). On March 25, 2004, Timothy K. Thoits, M.D., examined plaintiff and performed the EMG test. (A.R. 157-60). Dr. Thoits found that plaintiff was not in any distress and that his neck was supple. Plaintiff appeared to have a full range of motion in his shoulders. His reflexes were "symmetric at 2 at the biceps, brachioradialis, triceps, finger flexor, patellar and Achilles." (A.R. 157). Plaintiff's neurological examination was "fairly unremarkable" and Dr. Thoits found that plaintiff's strength and reflexes were normal and "did not reveal the laterailzed deficits that would indicate the presence of radiculopathy. His EMG confirmed this[.] [H]e [did] not have the electrophysiologic abnormalities that indicate the presence of a radiculopathy." (A.R. 158).

On May 18, 2004, Dr. Bereza performed an arthroscopic examination of the right shoulder with transarthrocopic partial acromionectomy and bursectomy and transarthroscopic excision of the distal clavicle. (A.R. 172-90). Dr. Bereza's May 28, 2004 progress notes report that plaintiff was "very comfortable" with a good range of motion. (A.R. 485). August 6, 2004 progress notes state that plaintiff's right shoulder had improved and that he was happy with the outcome.

(A.R. 531). On November 4, 2004, plaintiff returned to Dr. Bereza, received a corticosteroid injection, and was to be seen "as needed in the future." (A.R. 531).

On February 21, 2005, Dr. Bereza supplied plaintiff's attorney with a "Medical Assessment of Ability to do Work Related Activities (Physical)." (A.R. 520-25). This assessment form was not supported by any new test results. Among other things, Dr. Bereza stated that during an eight-hour workday, plaintiff could only sit for a total of one hour, stand for a total of one hour, and walk for a total of two hours. (A.R. 522). Dr. Bereza indicated that these and other restrictions had been in effect since October 20, 2002 (A.R. 522), seventeen months before Dr. Bereza began treating plaintiff.

Plaintiff returned to Dr. Bereza on March 23, 2005. (A.R. 481). Plaintiff reported that for approximately one month he had experienced pain in his right shoulder and a limited range of motion. X-rays of plaintiff's shoulder returned "excellent" results. (A.R. 481). Dr. Bereza stated his findings as follows:

> On exam, he has some atrophy of the infraspinatus. He has had previous EMG nerve conduction studies which are negative.
>
> The neck range of motion is good with flexion and extension, rotation not causing pain in the shoulder, but with shoulder motion abduction and internal and external rotation he is tender, has a positive impingement sign.
>
> Neurologic assessment reveals full strength in the deltoid in all directions. Biceps is full strength, triceps full strength, brachial radialis, grip, intrinsics and wrist extension [are] full strength. Reflexes are full in biceps, triceps and brachial radialis. Sensation is intact to pin and light touch with pinwheel.
>
> The shoulder x-ray today reveals no sign of calcification, no spurring off the acromion or recurrence of any excised bone.

(A.R. 481). Dr. Bereza suspected that plaintiff had symptomatic bursitis and rotator cuff tendonitis and recommended an injection of the subacromial space. (A.R. 481).

The most recent progress notes from Dr. Bereza are dated May 4, 2005. (A.R. 480). On examination Dr. Bereza found that plaintiff had a "fairly good" range of motion with no significant discomfort until about ninety degrees of abduction. Plaintiff had "good, strong opposition to force in all directions." (A.R. 480). Dr. Bereza was "unable to elicit any radicular pain with any ROM." (A.R. 480). Plaintiff's reflexes were preserved. He stated that plaintiff's x-rays indicated spondylolysis at what appeared to be C6 to C7. There was "no significant nerve foramen narrowing. There was no evidence of degenerative disc disease at higher levels of the cervical spine." (A.R. 480).

The ALJ's determination that the restrictions specified in the February 2005 assessment were not entitled to controlling weight is supported by more than substantial evidence. The proffered restrictions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the other substantial evidence in the record, including the opinions of plaintiff's other treating physicians and Dr. Bereza's own progress notes. *See Hash v. Commissioner*, No. 08-5654, 2009 WL 323101, at * 5-7 (6th Cir. Feb. 10, 2009). In fact, the restrictions set forth in Dr. Bereza's February 2005 report are totally at odds with his physical findings and the medical record as a whole.

I find that the ALJ's opinion easily satisfies the requirement that the ALJ supply "good reasons" for giving little weight to the February 2005 assessment. The Sixth Circuit has held that claimant's are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482

F.3d 873, 875-76 (6th Cir. 2007); *see Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876. The ALJ noted that Dr. Bereza "provided treatment notes from March 2004 to May 2005 (Exhibits 13F and 15F)." (A.R. 22). She then summarized Dr. Bereza's February 2005 assessment:

> In February 2005, the physician completed a medical assessment of the claimant's ability to do work-related activities and opined that the claimant could sit and stand one-half to one hour and walk for two hours. During an eight-hour workday the claimant could sit and stand a total of one hour, walk for two hours and sit/stand as needed for two hours. Dr. Bereza indicated that the claimant could occasionally lift/carry five to ten pounds, and could not perform work that was above chest level due to neck problems. In addition, the physician wrote that his patient had shoulder and neck arthritis with bicipital tendonitis and findings of tenderness to palpation. Dr. Bereza wrote that this had been the case since November 20, 2002, and he last examined the claimant in November 2004 (Exhibit 14F).

(A.R. 22). The concluding sentence of the above-quoted paragraph contains the ALJ's apt observations that three months had lapsed since Dr. Bereza had last treated plaintiff, and that Dr. Bereza was purporting to assess plaintiff's physical restrictions for a period long before Dr. Bereza had any treating physician relationship with plaintiff.

The ALJ further determined that Dr. Berza's February 2005 assessment was entitled to little weight because it had initially been filled out by plaintiff for Dr. Bereza to endorse with his signature:

> Regarding the assessment of Dr. Bereza in Exhibit 14F, it is not given significant weight. As noted on page 2 [of Exhibit 14F], the form was completed by the plaintiff for the physician to sign off on, and also done in order to assist the claimant in obtaining benefits.

(A.R. 25). Attorney Bleakley takes umbrage with the finding that the form was "completed by the plaintiff for the physician to sign off on." (Plf. Brief at 14). He argues there is no evidence to support the ALJ's "scurrilous" finding:

> [T]he ALJ asserted that the form Bereza signed was "completed by the claimant for the physician to sign off on." There is absolutely no evidence to support this scurrilous assertion. Plaintiff will freely admit that his attorney gave the *blank* form to Dr. Bereza to complete. That does not translate into *completion* of the form *by the claimant*.

(Plf. Brief at 14) (emphasis in original). I find nothing scurrilous about the ALJ's finding. It was a fair inference drawn from the January 13, 2005 transmittal letter from plaintiff's attorney's office to Dr. Bereza. Plaintiff's attorney's office did much more than supply Dr. Bereza with a blank form. The transmittal letter states, "We enclose a copy of a Medical *Assessment of Availability to do Work-Related Activities form completed by your patient regarding his limitations*. Please feel free to make any corrections you feel necessary, document your supportive findings and complete the last page. We also enclose a blank form for your completion if necessary." (A.R. 521) (emphasis added). The ALJ was more than justified in discounting this report and in relying instead on the objective medical evidence.

**3.**

Plaintiff disagrees with the ALJ's credibility determination. (Plf. Brief at 2, Statement of Errors ¶ III; Reply Brief at 2-3, docket # 8). This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn*

*v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *see also Gaskin v. Commissioner*, 2008 WL 2229848, at * 5. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234. The ALJ provided a detailed and lengthy discussion of her reasons for finding that plaintiff's subjective complaints were not fully credible. I find find that the ALJ's credibility determination is supported by more than substantial evidence. *See Cruse v. Commissioner*, 502 F.3d at 542-43; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v. Astrue*, 263 F. App'x 469, 475-76 (6th Cir. 2008).

**4.**

Plaintiff argues that the hypothetical question posed to the vocational expert was inadequate. (Plf. Brief at 2, Statement of Errors ¶ IV). A VE's testimony in response to a

hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Chandler v. Commissioner*, 124 F. App'x 355, 358-59 (6th Cir. 2005); *Turcus v. Social Security Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004). Plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  February 24, 2009                /s/  Joseph G. Scoville
                                         United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).